**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA) D/B/A FANNIE MAE,** | * | **CIVIL ACTION 21-551** |
| | * | **NO.** |
| **Plaintiff,** | * | **JUDGE** |
| **VERSUS** | * | **MAGISTRATE JUDGE** |
| **CEBARN CARROLL and AUSTIN CARROLL,** | * | |
| **Defendants.** | * | |

* * * * * * * * *

**COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes plaintiff, Federal National Mortgage Association (FNMA) D/B/A Fannie Mae ("Fannie Mae"), acting by and through an endorsement from Arbor Commercial Funding I, LLC ("Original Lender"), and for its Complaint against Defendants, Cebarn Carroll and Austin Carroll (the "Defendants" or the "Guarantors"), avers as follows:

**PARTIES**

1.

Plaintiff Fannie Mae is a government-sponsored enterprise chartered by Congress organized and existing under the laws of the United States, with its principal office in

Washington, D.C. Fannie Mae is deemed a citizen of the District of Columbia for jurisdictional purposes in civil cases. 12 U.S.C. § 1717(a)(2)(B).

2.

Made defendant herein is Cebarn Carroll, a person of the full age of majority and a citizen of the State of Florida, who is, upon information and belief, domiciled in the Pinellas County in Clearwater, Florida. Cebarn Carroll is a guarantor on the Note and Loan Documents that are the subject of this lawsuit and of the separate, completed foreclosure action of certain immovable property located at 11440 Bard Avenue, Baton Rouge, Louisiana 70815.

3.

Made defendant herein is Austin Carroll, a person of the full age of majority and a citizen of the State of Florida, who is, upon information and belief, domiciled in the Pinellas County in Clearwater, Florida. Austin Carroll is a guarantor on the Note and Loan Documents that are the subject of this lawsuit and of the separate, completed foreclosure action of certain immovable property located at 11440 Bard Avenue, Baton Rouge, Louisiana 70815.

**JURISDICTION AND VENUE**

4.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this is a civil action between citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff is a citizen of the District of Columbia, and Defendants are citizens of Florida.

5.

Venue for this action is proper in this Court pursuant to 28 U.S.C. §1391(a), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district and the property that secured the Note that is the subject of this lawsuit, which was the subject of a separate foreclosure action, is situated within this judicial district at municipal address of 11440 Bard Avenue, Baton Rouge, Louisiana 70815.

**BACKGROUND FACTS**

6.

On or about September 7, 2016, Arbor Commercial Funding I, LLC ("Original Lender") loaned $8,000,000.00 (the "Loan") to Carroll Properties One LLC ("Carroll Properties") pursuant to the terms of a Multifamily Loan and Security Agreement (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 1.**

7.

The Loan is evidenced by that certain Multifamily Note, dated as of September 7, 2016 in the face amount of $8,000,000.00 and executed by Austin Carroll, on behalf of Carroll Properties and as managing member of AZCO Capital LLC, which entity is the managing member of Carroll Properties, to the order of Original Lender (as may have been assumed, amended and/or assigned from time to time, the "Note"). The Note has been assigned and endorsed to Fannie Mae and is secured by certain real property and improvements on the property. As a result, Fannie Mae is the owner and holder of the Note. A true and correct copy of the Note and all allonges affixed thereto is attached hereto, collectively, as **Exhibit 2**.

8.

As security for Carroll Properties' obligations, Cebarn Carroll and Austin Carroll executed that certain Guaranty of Non-Recourse Obligations, dated as of September 7, 2016, in favor of Original Lender (as may have been assumed, amended and/or assigned from time to time, the "Guaranty"). Pursuant to the Guaranty, Cebarn Carroll and Austin Carroll (together, the "Guarantors") personally guaranteed certain obligations of, and agreed to be solidarily bound with, Carroll Properties under the Note and Loan. A true and correct copy of the Guaranty is attached hereto as **Exhibit 3**.

9.

To further secure the Note and Loan, Austin Carroll, on behalf of Carroll Properties and as managing member of AZCO Capital LLC, which entity is the managing member of Carroll Properties, executed a Multifamily Mortgage, Assignment of Leases and Rents and Security Agreement, in favor of the Original Lender, as of September 7, 2016 and recorded on September 13, 2016 at Original 722, Bundle 12755 in the Official Mortgage and Conveyance Records for East Baton Rouge Parish (collectively, the "Security Instrument"), granting a security interest in and to certain real property and improvements on the property bearing the municipal address 11440 Bard Avenue in Baton Rouge, Louisiana, which is known as the Pine Grove Apartments (the "Property"). A copy of the Security Instrument is attached hereto as **Exhibit 4**.

10.

Original Lender assigned the Security Instrument to Fannie Mae pursuant to that certain Assignment of Multifamily Mortgage dated as of September 7, 2016, executed by Original

Lender and recorded at Original 723, Bundle 12755 in the Official Mortgage and Conveyance Records for East Baton Rouge Parish. A copy of the Assignment of Multifamily Mortgage is attached hereto as **Exhibit 5**.

11.

Original Lender also endorsed the original Note and assigned the Loan Agreement, Guaranty, and other loan documents to Fannie Mae, as evidenced by that certain Assignment of Collateral Agreements and Other Loan Documents, dated September 7, 2016 and executed by the Original Lender. As a result, Fannie Mae is the current owner and holder of the Loan and all other Loan documents, and is entitled to enforce all provisions thereof. A copy of the Assignment of Collateral Agreements and Other Loan Documents is attached hereto as **Exhibit 6**.

12.

A default occurred under the Note when Carroll Properties failed to maintain the Property in good repair and condition, as required under the Loan Documents.

13.

In the Loan Documents, Carroll Properties agreed to keep the Property in good repair and marketable condition, to make repairs as required by Fannie Mae following Fannie Mae's notice of necessary repairs, and to perform all replacements and repairs in a good and workmanlike manner.[1]

---

[1] *See* Exhibit 1, Loan Agreement, Article 6, at page 24.

14.

The Loan Agreement provides that Fannie Mae may, upon 30 days prior written notice to Carroll Properties, require an additional deposit into the Repairs Account if Fannie Mae determines that the amount on deposit in the Repairs Account is not sufficient to cover the costs for required repairs at the Property.

15.

By letter dated September 12, 2018 (the "Demand Letter"), Arbor Commercial Funding I, LLC, as servicer on behalf of Fannie Mae, provided Carroll Properties with a copy of a property condition assessment (the "Property Assessment") prepared by a third-party real property consultant that identified recommended repairs and replacements at the Property, including life safety, critical repairs, and deferred maintenance in the total amount of $890,875.00. In the Demand Letter, Fannie Mae made demand on Carroll Properties and Mr. Carroll for the sum of (a) $345,000.00 for the Life Safety Cost, (b) $516,875.00 for the Critical Repair Cost, (c) $29,000.00 for the Deferred Maintenance Cost ("Additional Deposits") to be deposited into the Repairs Account held by the loan servicer within thirty days in accordance with the terms of the Loan Documents. Fannie Mae also demanded an additional $2,926.58 per month into the Replacement Reserves pursuant to Section 13.02(a)(4) of the Loan Agreement until further notice ("Additional Replacement Reserves"). As a result, the Replacement Reserve monthly collection amount increased from $4,567.50 to $7,494.08 per month (reflecting the increase of $2,926.58 per month demanded in the Demand Letter). Additionally, in the Demand Letter, Fannie Mae advised Carroll Properties that the failure to maintain the Property may constitute an

Event of Default under the Loan Documents. A true and correct copy of the Demand Letter, which includes the Property Assessment, is attached hereto as **Exhibit 7**.

16.

In the Demand Letter, Fannie Mae also demanded certain repairs by Carroll Properties, including: (i) the items listed as Life Safety in the PCA, which repairs were to be implemented immediately and fully completed within 30 days of the date of the Demand Letter, (ii) the items listed as Critical Repairs in the PCA within 6 months of the date of the Demand Letter, and (iii) the items listed as Deferred Maintenance in the PCA within 12 months of the date of the Demand Letter (collectively, the "Repairs").

17.

Not only did Carroll Properties fail to pay the monthly escrow payments, but Carroll Properties did not make the Additional Deposit into the Repair Account nor the Additional Replacement Reserves in the Replacement Reserves within 30 days of the Demand Letter. To date, the Additional Deposit and Additional Replacement Reserves have not been made. This failure constitutes an Event of Default under the Loan Documents, specifically, Section 14.01 of the Loan Agreement.

18.

By letter dated October 26, 2018, Fannie Mae provided notice to Carroll Properties and each of the Guarantors of Carroll Properties' default under the Loan Documents and accelerated the Loan (the "Default and Acceleration Letter"). In the Default and Acceleration Letter, Fannie Mae demanded "immediate payment in full of the entire unpaid principal balance of the Note,

plus any accrued interest, default interest, the Prepayment Premium, Fannie Mae's expenses, costs and fees, including attorney's fees, and any other sums paid by Fannie Mae to protect its rights or the subject Property, as provided by the Loan Documents." A true and correct copy of the Default and Acceleration Letter is attached hereto as **Exhibit 8**.

19.

In the Default and Acceleration Letter, Fannie Mae further informed Carroll Properties that its license to collect rents from the Property had terminated.

20.

Due to these defaults, and in accordance with the terms of the Note and the Security Instrument, Fannie Mae filed its Verified Petition for Executory Process in the 19th Judicial District for the Parish of East Baton Rouge, State of Louisiana, in the action entitled *Federal National Mortgage Association (FNMA) d/b/a Fannie Mae v. Carroll Properties One LLC*, No. 677793, Div. "D" (the "Foreclosure Action"). A copy of the Foreclosure Action (without accompanying exhibits) is attached hereto as **Exhibit 9**.

21.

At the time of the filing the Foreclosure Action, the total balance of the Loan was $8,153,223.84 (including attorney's fees to date, detailed below), consisting of the amounts detailed below:

| | |
|---|---|
| Principal Balance | $7,722,532.59 |
| Interest (11/1/18 - 11/30/18) | $27,286.28 |
| Prepayment Premium | $524,913.26 |

| | |
|---|---|
| Broker's Price Opinion | $1,000.00 |
| Property Condition Assessments | $3,640.00 |
| Credit from Tax Escrow | ($56,666.88) |
| Credit from Insurance Escrow | ($17,280.56) |
| Credit from Replacement Reserve | ($52,200.85) |
| **Total Payoff** | **$8,153,223.84** |

*See*, Exhibit 9, ¶ 23.

22.

On January 24, 2019, the Honorable Janice Clark ordered as prayed for in the Foreclosure Action and according to law the issuance of a Writ of Seizure and Sale WITH BENEFIT OF APPRAISAL (the "Judicial Sale"). *See*, January 24, 2019 Order attached hereto as **Exhibit 10.**

23.

On September 23, 2020, the Property was sold at a judicial sale to Fannie Mae for $2,500,000.00. Fannie Mae retained $2,392,175.26 and paid $107,824.74 to the Sheriff for commission, fees, and costs.

24.

The total amount due to Fannie Mae under the Loan Documents at the time of the judicial sale date was $9,900,885.85, which included the following amounts:

| | |
|---|---|
| Principal Balance | $7,733,604.71 |
| Interest | $28,236.25 |
| Default Interest | $1,226,704.41 |
| Tax Advance by Servicer | $109,660.88 |

| | |
|---|---|
| Insurance Advance by Servicer | $12,402.18 |
| Legal Fees as of September 9, 2020 | $70,632.98 |
| Insurance Claim Estimate | $37,592.00 |
| Appraisal | $8,300.00 |
| Broker's Price Opinion | $2,000.00 |
| Phase I Environmental Site Assessment | $4,300.00 |
| Physical Needs Assessment | $12,540.00 |
| Funding to Keeper | $951,961.17 |
| Sheriff's Fee | $107,824.74 |
| Credit from Funds Held | ($278,721.45) |
| Credit from Tax Escrow | ($56,666.88) |
| Credit from Insurance Escrow | ($17,280.56) |
| Credit from Replacement Reserve | ($52,204.58) |
| **Total Payoff** | **$9,900,885.85** |

A copy of the Act of Sale & Cancellation was recorded on November 25, 2020, with the Clerk of Court and Recorder of East Baton Rouge Parish, Louisiana in the Official Mortgage and Conveyance Records at Original 741, Bundle 13069. A copy of the Act of Sale & Cancellation is attached hereto as **Exhibit 11**.

25.

As indicated in the Act of Sale & Cancellation, the Property was sold, **with** appraisal in accordance with Louisiana Code of Civil Procedure article 2723. As indicated by in the

Appraisement Sheet, the Property was appraised by the Sheriff of East Baton Rouge Parish for $3,500,000.00. A copy of the Appraisement Sheet is attached hereto as **Exhibit 12**.

**CLAIM FOR DEFICIENCY**

26.

Fannie Mae hereby incorporates for all purposes the allegations set forth in each paragraph stated above.

27.

As previously stated, because the Foreclosure Action was completed **with the benefit of appraisal**,[2] Fannie Mae is entitled, under Louisiana law, to pursue a deficiency judgment against the Guarantors.

28.

Fannie Mae brings suit for the sum of the deficiency balance, which exists because the foreclosure sale price of $2,500,000.00 was insufficient to pay the total amount due and owing under the terms of the Loan Documents.

29.

As of June 14, 2021 the total debt owed to Fannie Mae is $**8,040,057.31** (the "Deficiency"), (including the credit of $2,500,000.00 from the sale price of Property at the judicial sale and attorney's fees to date), consisting of the amounts detailed below:[3]

---

[2] The Louisiana Deficiency Judgment Act ("LDA"), La. R.S. 13:4106 *et seq*. sets forth the statutory framework to obtain a deficiency judgment for any outstanding balance due after application of proceeds of the judicial sale are insufficient to satisfy the debt. The ability of a lender to pursue a deficiency judgment depends on whether the judicial sale was with or without benefit of appraisal. *See* La. C.C.P. art. 2771; La. R.S. 13:4106 *et seq*.

| | |
|---|---|
| Principal Balance | $7,733,604.71 |
| Prepayment Premium | $610,139.36 |
| Interest | $28,236.25 |
| Default Interest | $1,226,704.41 |
| Late Charge | $0.00 |
| Tax Advance by Servicer | $109,660.88 |
| Insurance Advance by Servicer | $12,402.18 |
| Legal Fees as of June 14, 2021 | $99,665.08 |
| Insurance Claim Estimate | $37,592.00 |
| Appraisal | $8,300.00 |
| Broker's Price Opinion | $2,000.00 |
| Phase I Environmental Site Assessment | $4,300.00 |
| Physical Needs Assessment | $12,540.00 |
| Funding to Keeper | $951,961.17 |
| Sheriff's Fee | $107,824.74 |
| Credit from Funds Held | ($278,721.45) |
| Credit from Tax Escrow | ($56,666.88) |
| Credit from Insurance Escrow | ($17,280.56) |
| Credit from Replacement Reserve | ($52,204.58) |
| Credit from the Judicial Sale | ($2,500,000) |

[3] Additionally, interest and costs, including without limitation attorneys' fees and expenses, and other amounts due and owing pursuant to the terms of the Loan Documents continue to accrue.

| **TOTAL** | **$8,040,057.31** |
|---|---|

30.

Because the Guarantors breached their obligations under the Loan Documents, and specifically the Guaranty, they are personally liable for the entire Deficiency.

31.

The Guarantors each personally guaranteed the obligations of under the Note and Loan by the execution of the Guaranty. Pursuant to the Guaranty, each Guarantor "absolutely, unconditionally and irrevocably guarantee[d] to Lender the full and prompt payment and performance when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of . . . all amounts, obligations and liabilities owed to Lender under Article 3 (Personal Liability) of the Loan Agreement (including the payment and performance of all indemnity obligations of Borrower described in Section 3.03 (Personal Liability for Indemnity Obligations) of the Loan Agreement and including all of Borrower's obligations under the Environmental Indemnity Agreement)."[4]

[4] *See* Exhibit 3, Guaranty, at page 2.

32.

Paragraph 3.02(b) of the Loan Agreement provides that, upon the occurrence of certain specified events of default, Carroll Properties and Guarantors face personal liability for all of the indebtedness under the Note and Loan Documents upon certain events.[5]

33.

Section 3.02(b)(2) of the Loan Agreement specifies that upon the occurrence of "a Transfer . . . that is not permitted under this Loan Agreement or any other Loan Document," Carroll Properties and Guarantors "shall be personally liable to Lender for the repayment of all of the Indebtedness, and the Mortgage Loan shall be fully recourse to Borrower."[6] Section 11.02 of the Loan Agreement prohibits the "Transfer, or cause or permit a Transfer of, all or any part of the Mortgaged Property (including any interest in the Mortgaged Property)[.]"[7] Schedule 1 to Loan Agreement defines a "transfer" as not only the "sale, assignment, transfer or other disposition," but also "a granting, creating, or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law)."[8]

34.

Here, Carroll Properties and Guarantors permitted such Transfers, as evidenced by three separate liens – in favor of Cornerstone Commercial Flooring for $7,447.54; Noland

[5] *See* Exhibit 1, Loan Agreement, at page 10.

[6] *See* Exhibit 1, Loan Agreement, at page 10.

[7] *See* Exhibit 1, Loan Agreement, at page 47.

[8] *See* Exhibit 1, Loan Agreement, Schedule 1 at page 15.

Company (HVAC) for $17,009.68; and Roto Rooter Plumbing for $12,382.50 – placed on the Property.[9]

35.

Therefore, because Carroll Properties and Guarantors allowed a Transfer that is prohibited under the Loan Documents, the Guarantors are liable *in solido* to Fannie Mae for the Deficiency.

36.

As such, pursuant to the Louisiana Deficiency Judgment Act, La. R.S. 13:4106 *et seq.*, Carroll Properties and each of the Unlimited Guarantors, are liable for the full Deficiency amount of $7,429,917.95, plus attorneys' fees and interest at the maximum legal rate from the date of the Judicial Sale until payment in full of the Deficiency plus costs, expenses, and interest.

37.

As of the date of this filing, neither Carroll Properties nor the Guarantors have made any payment to Fannie Mae on the Deficiency.

**CLAIM FOR WASTE**

38.

Fannie Mae hereby incorporates for all purposes the allegations set forth in each paragraph stated above.

[9] *See* Exhibit 11, Act of Sale & Cancellation, at pages 5-6.

39.

Alternatively, because the Guarantors breached their obligations to repair and maintain the Property, they are personally liable for the damages caused as a result thereof.

40.

Louisiana Stat. Ann. § 9:5382, provides that "the holder of a conventional mortgage shall have the same rights, privileges, and actions as the mortgagor land owner to recover against any person who, without the written consent of the mortgagee, buys, sells, cuts, removes, holds, disposes of, changes the form of, or otherwise converts to the use of himself or another, any trees, buildings, or other immovables covered by the mortgage."

41.

Here, Carroll Properties and/or the Guarantors failed to maintain the Property, necessitating out of pocket expenses and diminished value to the Property.

42.

At or around the time of the Loan Agreement, a Property appraisal was conducted, and a valuation of $10,000,000 was attributed to the Property value.

43.

On information and belief, the Property was exceedingly poor condition at the time of the Judicial Sale, resulting in a diminished valuation of the Property at Judicial Sale of $3,500,000.[10]

---

[10] *See* Exhibit 3, Appraisement Sheet.

44.

Therefore, because Carroll Properties and Guarantors failed to properly maintain and repair the Property, they are liable for all damages, which exceed $75,000.00, as a result of such waste.[11]

**CLAIM FOR ATTORNEYS' FEES**

45.

Fannie Mae hereby incorporates for all purposes the allegations set forth in each paragraph stated above.

46.

Pursuant to the Guaranty, Fannie Mae is entitled to recover "all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty."[12] As a result of the Guarantors' failure to pay the amount of the deficiency, Fannie Mae retained the undersigned counsel and agreed to pay them reasonable attorneys' fees and costs for collecting the amount of the deficiency. Fannie Mae has incurred and will continue to incur such fees and expenses, for which Fannie Mae now sues.

**WHEREFORE**, Federal National Mortgage Association (FNMA) D/B/A Fannie Mae, prays that, after due proceedings are had, there be judgment rendered in its favor and against Cebarn Carroll and Austin Carroll, *in solido* for the full amount of the Deficiency balance owed

---

[11] *See e.g., Finley v. Chain*, 176 Ind. App. 66, 374 N.E.2d 67 (1978); *Vogel v. Pardon*, 444 N.W.2d 348 (N.D.1989).

[12] *See* Exhibit 3, Guaranty, at page 2.

to Federal National Mortgage Association (FNMA) D/B/A Fannie Mae, plus interest, as well as for all fees and expenses incurred in the collection and sale of the Property, including but not limited to any prepayment premiums and interest at the maximum legal rate from the date of the Judicial Sale until payment in full of the Deficiency, plus all attorneys' fees and costs of these proceedings, or, in the alternative, because Borrower and/or Cebarn Carroll and Austin Carroll failed to properly maintain and repair the Property, they are liable for all damages, which exceed $75,000.00, as a result of such waste.

Respectfully submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

BY: /s/ *Katie L. Dysart*
KATIE L. DYSART (31449)
MARGARET A. MENTZ (37796)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
kdysart@bakerdonelson.com
mmentz@bakerdonelson.com

**ATTORNEYS FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA) D/B/A FANNIE MAE**