UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **FEDERAL NATIONAL MORTGAGE ASSOCIATION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-551-RLB** |
| **CEBARN CARROLL, ET AL.** | **CONSENT CASE** |

**ORDER**

Before the Court is Latter & Blum Property Management, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss"). (R. Doc. 38). The motion is opposed. (R. Doc. 44).

Oral argument is not necessary to resolve the instant Motion to Dismiss.

**I.    Background**

On September 23, 2021, the plaintiff, Federal National Mortgage Association (FNMA) D/B/A Fannie Mae ("Fannie Mae"), acting by and through an endorsement from Arbor Commercial Funding I, LLC ("Arbor"), brought this action against the defendants, Cebarn Carroll and Austin Carroll (collectively, the "Carrolls"). (R. Doc. 1, "Complaint"). In the Complaint, Fannie Mae alleges that the Carrolls are personally liable as guarantors for, among other things, the breach of obligations to repair and maintain certain real property and improvements in Baton Rouge known as the Pine Grove Apartments (the "Property"). The Property was purchased on September 9, 2016 by Carroll Properties One LLC ("Carroll Properties"), a Washington limited liability company of which the Carrolls were members.[1] To finance this purchase, Carroll Properties executed a Multifamily Loan and Security Agreement

---

[1] It appears that Carroll Properties is now inactive. (*See* R. Doc. 28 at 32-33).

(Non-Recourse) (the "Loan Agreement") to obtain an $8,000,000 loan. (R. Doc. 1-1 at 1-124; Ex. 1 to Complaint).

In anticipation of the purchase of the Property, Carroll Properties entered into a Property Management Agreement with Latter & Blum Property Management, Inc. ("Latter & Blum") on August 16, 2016. (R. Doc. 28 at 13-31). The Property Management Agreement made Latter & Blum the "sole and exclusive property manager to lease and manage" the Property from the time of its purchase. (R. Doc. 28 at 13).

On October 26, 2018, Fannie Mae sent a letter putting Carroll Properties on notice that there was an "Event of Default" under Section 14.01 of the Loan Agreement because Carroll Properties did not timely deposit certain sums demanded by Arbor ("Notice of Default"). (R. Doc. 1-1 at 176-179, Ex. 8 to Complaint). Fannie Mae notified Carroll Properties that the loan was accelerated, that Fannie Mae had the right to foreclose on the Property, and that Fannie Mae had terminated Carroll Properties' license to collect rents. (R. Doc. 1-1 at 176-179).

On December 28, 2018, Fannie Mae initiated foreclosure proceedings by filing a Verified Petition for Executory Process in the 19th Judicial District for the Parish of East Baton Rouge, State of Louisiana (the "Executory Proceeding").[2] (R. Doc. 1-1 at 180-191; Ex. 9 to Complaint). The state court judge then signed an Order of Seizure and Sale in the Executory Proceeding, ordering the issuance of Writ of Seizure and Sale, with appraisal, of the Property. (R. Doc. 1-1 at 192-194). The Order of Seizure and Sale appointed Latter & Blum as the keeper of the mortgaged property with full power of administration of the seized property. (R. Doc 1-1 at 194). Fannie Mae purchased the Property at the judicial sale. (R. Doc. 1-1 at 195-202; Ex. 11 to Complaint).

---

[2] *See Federal National Mortgage Association (FNMA) d/b/a Fannie Mae v. Carroll Properties One LLC*, No. 677793, Div. "D".


Fannie Mae is now seeking recovery from the Carrolls on the basis that they are guarantors who are personally liable for breach of the obligations to repair and maintain the Property, as well as for "Transfers" not permitted under the Loan Agreement. (R. Doc. 1). These purportedly disallowed "Transfers" constitute three separate liens that were placed on the Property prior to the September 23, 2020 judicial sale: (1) $7,477.54 lien by Cornerstone Commercial Flooring, L.L.C recorded on November 19, 2018 (the "Cornerstone Lien"); (2) $17,009.68 lien by Noland Company recorded on February 1, 2019 (the "Noland Lien"); and (3) a $12,382.50 lien by Baton Rouge Sewer & Drain Service, Inc. d/b/a Roto Rooter Plumbing recorded on February 6, 2019 (the "Roto Rooter Lien") (collectively, the "Liens"). (R. Doc. 1-1 at 199-200).

The Carrolls sought dismissal of the action, claiming that they are not subject to personal liability because the Executory Proceeding was based on a non-recourse ground under the Loan Agreement. (R. Doc. 12). The Court denied the motion. (R. Doc. 18).

On October 25, 2022, the Carrolls' Third-Party Complaint against Latter & Blum was entered into the record. (R. Doc. 28). In this pleading, the Carrolls seek recovery against Latter & Blum based on theories of breach of contract, breach of fiduciary duties, and third-party beneficiary status. Among other things, the Carrolls allege that Latter & Blum ordered and refused to pay for materials and labor from Cornerstone, Noland, and Roto Rooter, resulting in the Liens. (R. Doc. 28 at 5-7). The Carrolls allege that Latter & Blum "chose to pay itself and reimburse itself out of operating revenues in preference to paying amounts due Cornerstone, Noland and Roto Rooter (and perhaps other accounts payable) and to keep the Property in proper repair." (R. Doc. 28 at 8). As a result, the Carrolls allege that Latter & Blum should be held

liable to the extent that the Liens and the waste "result in personal liability of [the Carrolls] to Fannie Mae." (R. Doc. 28 at 8-9).

On January 11, 2023, Latter & Blum filed the instant Motion to Dismiss. (R. Doc. 38). Latter & Blum argues that the Carrolls have failed to state claims for breach of contract, breach of fiduciary duty, or third-party beneficiary status because they are not parties to the Property Management Agreement and are not otherwise designated as third-party beneficiaries in that contract.

In opposition, the Carrolls argue that they have stated a plausible claim for legal indemnity, which would not require privity of contract. (R. Doc. 44 at 6-12). In the alternative, the Carrolls seek the opportunity to amend the Third-Party Complaint to raise a claim for legal indemnity. (R. Doc. 44 at 12).

**II.    Law and Analysis**

    **A.    Legal Standards**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed

to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

**B.     Analysis**

**1.     Breach of Contract and Breach of Fiduciary Duty**

The first two causes of action alleged in the Third-Party Complaint are for (1) Breach of Contractual Duties and (2) Breach of Fiduciary Duties. (R. Doc. 28 at 8-9). For the reasons stated below, these causes of action are subject to dismissal with prejudice.

Latter & Blum argue that the Carrolls do not have the contractual privity that would allow the Carrolls to bring claims of breach of contract and breach of fiduciary duty against Latter & Blum under the Property Management Agreement. The Court agrees. Under Louisiana law,[3] no action for breach of contract may lie in the absence of privity of contract between the parties. *Pearl River Basin Land and Dev. Co., L.L.C. v. State, ex rel. Governor's Office of Homeland Sec. and Emergency Preparedness*, 29 So. 3d 589, 592 (La. App. 1st Cir. 2009); *see Sanderson v. H.I.G. P-XI Holding, Inc.*, No. 99-3313, 2000 WL 1042813, at *3 (E.D. La. July

---

[3] The Third-Party Complaint does not identify the substantive state law under which the Carrolls are seeking recovery. The Court applies substantive state law in a diversity action. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *see ACS Construction Co., Inc. of Mississippi v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003) ("We look to state law for rules governing contract interpretation."). In addition, the Property Management Agreement provides that "[t]he execution, interpretation and performance of this Agreement shall in all respects be controlled and governed by the laws of the State of the location of the Project." (R. Doc. 28 at 29). Given that the Project is located in Louisiana, the Court will apply Louisiana law to the contract-based claims raised in the Third-Party Complaint.

27, 2000) ("It is beyond dispute that privity between a plaintiff and defendant is necessary to the maintenance of an action on a contract.").

The Property Management Agreement is a contract between Latter & Blum and Carroll Properties. There is no dispute that Carroll Properties, a separate legal entity, was the actual party to the contract.[4] The Carrolls do not allege in the Third-Party Complaint that they were parties to the Property Management Agreement. In short, the Carrolls in their individual capacities are not parties to the contract. Accordingly, the Court concludes that the Carrolls cannot allege breach of contract or breach of fiduciary duty claims against Latter & Blum under the Property Management Agreement.

Indeed, it appears that the Carrolls have abandoned their breach of contract and breach of fiduciary duty claims in support of an argument that their pleading should be liberally construed to raise a claim for legal indemnity. (R. Doc. 44 at 6). The Court declines to construe the allegations in the Third-Party Complaint to state a claim that was not alleged. The breach of contract and breach of fiduciary duty claims must be dismissed.

### 2.   Third-Party Beneficiary Status

The third cause of action in the Third-Party Complaint seeks recovery under the Property Management Agreement based on the Carrolls alleged status as third-party beneficiaries. (R. Doc. 28 at 10-11). This cause of action is also subject to dismissal.

The Carrolls claim that they are third-party beneficiaries to the Property Management Agreement because they were members of Carroll Properties. More specifically, the Carrolls

---

[4] *See Danos Tree Serv., LLC v. Proride Trailers, LLC*, 255 So. 3d 1078, 1084 (La. App. 1st Cir. 2018) (limited liability companies are "recognized juridical persons" that constitute "a separate legal entity from its members"); *see* La. Civ. Code art. 24 ("A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members."); *see also* Wash. Rev. Code § 25.15.071(3) (limited liability companies formed under Washington law are separate legal entities).

claim that "[a]s members of [Carroll Properties], [the Carrolls] are direct beneficiaries of the contractual and fiduciary duties owed by Latter & Blum under the Property Management Agreement. In the alternative, [the Carrolls], as members of [Carroll Properties], are third party beneficiaries of the Property Management Agreement." (R. Doc. 28 at 10).

Again, there is no dispute that Carroll Properties (and not the Carrolls) was the legal entity who entered into the Property Management Agreement with Latter & Blum. The Carrolls have not directed the Court to any decisional law finding that members of a limited liability company are, without more, third-party beneficiaries to any contract entered into by the limited liability company. Indeed, the case law holds otherwise. *See Axis Surplus Ins. Co. v. Third Millennium Ins. & Fin. Servs., Inc.*, 781 F. Supp. 2d 320, 325 (E.D. La. 2011) ("[A] person is not a third-party beneficiary of a contract just because he or she has an ownership interest in a company that is a party to the contract."). The Carrolls' status as members of Carroll Properties – a separate juridical entity – is insufficient to establish third-party beneficiary status with respect to the Property Management Agreement.

To be clear, Louisiana law provides that "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary." La. Civ. Code art. 1978. The contract for the benefit of a third-party is commonly referred to as a stipulation *pour autrui*. *Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary*, 939 So.2d 1206, 1211 (La. 2006). In *Joseph*, the Supreme Court of Louisiana held that there are three criteria for determining whether contracting parties have created a stipulation *pour autrui*: "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Id.* at 1212. Additionally,

"[a] stipulation *pour autrui* is never presumed. The party claiming the benefit bears the burden of proof." *Id.* (citing La. Civ. Code art. 1831).

The Third-Party Complaint does not reference, and the Court has not found, any manifestly clear language in the Property Management Agreement establishing the Carroll's rights as third-party beneficiaries. In addition, the Carrolls make no attempt to prove third-party beneficiary status in their opposition to the instant Motion to Dismiss. Instead, the Carrolls ignore their allegations of third-party beneficiary status in favor of arguing that they have, in actuality, stated a claim for legal indemnity. Given the foregoing, the Court concludes that the Carrolls have not sufficiently alleged a cause of action under a theory of a third-party beneficiary status.

### 3.   **Legal Indemnity**

The Carrolls nevertheless contend that the allegations in their Third-Party Complaint clearly and sufficiently plead a legal indemnity claim under Louisiana law, or that they should alternatively be provided the opportunity to allege such a claim under Louisiana law. (R. Doc. 44 at 5-12).

Louisiana law recognizes a claim for legal indemnity. "It has long been held in Louisiana that a party not actually at fault, whose liability results from the faults of others, may recover by way of indemnity from such others." *Nassif v. Sunrise Homes, Inc.*, 739 So. 2d 183, 185 (La. 1999) (quoting *Bewley Furniture Co. v. Maryland Cas. Co.*, 285 So. 2d 216, 219 (La. 1973)). "The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement." *Nassif*, 739 So. 2d at 185 (citations omitted). "The cases have referred to this imposed liability variously as technical, constructive, vicarious and derivative." *Bewley*, 285 So. 2d at 219.

A claim for legal indemnity "arises only where the liability of the person seeking indemnification is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed." *Nassif*, 739 So. 2d at 185. Stated differently, "the right to indemnity from the person primarily negligent exists only in favor of one who is vicariously liable for the damages caused because of merely technical or constructive fault." *Hebert v. Blankenship*, 187 So. 2d 798, 803 (La. App. 3d Cir. 1966). A party "who is actually negligent or actually at fault cannot recover [legal] indemnity." *Hamway v. Braud*, 838 So. 2d 803, 806 (La. App. 1st Cir. 2002). Accordingly, "a third-party claim for indemnity should be dismissed if '[t]here is no foreseeable combination of findings, viewing the allegations of the pleadings . . . in the light most favorable to the [party seeking indemnity], that could result in [that party] being cast in judgment for mere technical or passive fault.'" *Martco Ltd. P'ship v. Brucks Inc.*, 430 Fed. App'x 332, 335 (5th Cir. 2011) (quoting *Threlkeld v. Haskins Law Firm*, 922 F.2d 265, 267-68 (5th Cir. 1991)).

As stated above, the Third-Party Complaint does not allege a claim for legal indemnity. The Court will not construe explicit contract-based theories of recovery as legal indemnity claims. That said, the Carrolls have asserted that they are in fact seeking to allege a legal indemnity claim in the absence of any contractual obligations between the Carrolls and Latter & Blum. The Carrolls seek to expressly allege "that any liability they may owe to Fannie Mae is derivative of Latter & Blum's breach of the Property Management Agreement and that Fannie Mae's damages 'were solely by the fault, actions and inactions of Latter & Blum.'" (R. Doc. 44 at 11) (quoting R. Doc. 24 at 9).[5] Notably, Latter & Blum did not file a reply memorandum addressing any potential futility of the proposed legal indemnity claim.

---

[5] The Carrolls asserted, as an affirmative defense, that Fannie Mae's alleged damages "were caused solely by the fault, actions and inactions of Latter & Blum." (R. Doc. 24 at 9).

9

Accordingly, the Court will provide the Carrolls an opportunity file an Amended Third-Party Complaint raising a claim for legal indemnity consistent with Louisiana law. The Court takes no position at this time regarding whether such a claim against Latter & Blum is proper and would survive dismissal.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Latter & Blum's Motion to Dismiss for Failure to State a Claim (R. Doc. 38) is **GRANTED**. The Third-Party Complaint (R. Doc. 28), which raised claims for breach of contract, breach of fiduciary duty, and third-party beneficiary status, is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Carrolls shall file an Amended Third-Party Complaint raising any claim for legal indemnity against Latter & Blum on or before **June 7, 2023**.

**IT IS FURTHER ORDERED** that the Scheduling Order (R. Doc. 23) is **VACATED**. An amended joint status report shall be filed on or before **June 14, 2023** and shall contain inserts of all parties, including Latter & Blum. A telephone scheduling conference is set for **June 29, 2023 at 11:30 a.m.** Counsel for Plaintiff shall initiate the call to all parties then contact the Court at (225) 389-3602.

Signed in Baton Rouge, Louisiana, on May 23, 2023.

                              **RICHARD L. BOURGEOIS, JR.**
                              **UNITED STATES MAGISTRATE JUDGE**