# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**FEDERAL NATIONAL MORTGAGE
ASSOCIATION**                                                    **CIVIL ACTION**

**VERSUS**                                                       **NO. 21-551-RLB**

**CEBARN CARROLL, ET AL.**                                       **CONSENT CASE**

## ORDER

Before the Court is Latter & Blum Property Management, Inc.'s ("Latter & Blum")

Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss").

(R. Doc. 54). The motion is opposed. (R. Doc. 56). Latter & Blum filed a Reply. (R. Doc. 58).

Oral argument is not necessary to resolve the instant Motion to Dismiss.

## I.    Background

On September 23, 2021, the plaintiff, Federal National Mortgage Association (FNMA)

D/B/A Fannie Mae ("Fannie Mae"), acting by and through an endorsement from Arbor

Commercial Funding I, LLC ("Arbor"), brought this action against the defendants, Cebarn

Carroll and Austin Carroll (collectively, the "Carrolls"). (R. Doc. 1, "Complaint"). In the

Complaint, Fannie Mae alleges that the Carrolls are personally liable as guarantors for, among

other things, the breach of obligations to repair and maintain certain real property and

improvements in Baton Rouge known as the Pine Grove Apartments (the "Property"). The

Property was purchased on September 9, 2016 by Carroll Properties One LLC ("Carroll

Properties"), a Washington limited liability company of which the Carrolls were members.[1] To

finance this purchase, Carroll Properties executed a Multifamily Loan and Security Agreement

---

[1] It appears that Carroll Properties is now inactive. (*See* R. Doc. 28 at 32-33).

(Non-Recourse) (the "Loan Agreement") to obtain an $8,000,000 loan. (R. Doc. 1-1 at 1-124; Ex. 1 to Complaint).

In anticipation of the purchase of the Property, Carroll Properties entered into a Property Management Agreement with Latter & Blum Property Management, Inc. ("Latter & Blum") on August 16, 2016. (R. Doc. 28 at 13-31). The Property Management Agreement made Latter & Blum the "sole and exclusive property manager to lease and manage" the Property from the time of its purchase. (R. Doc. 28 at 13).

On October 26, 2018, Fannie Mae sent a letter putting Carroll Properties on notice that there was an "Event of Default" under Section 14.01 of the Loan Agreement because Carroll Properties did not timely deposit certain sums demanded by Arbor ("Notice of Default"). (R. Doc. 1-1 at 176-179, Ex. 8 to Complaint). Fannie Mae notified Carroll Properties that the loan was accelerated, that Fannie Mae had the right to foreclose on the Property, and that Fannie Mae had terminated Carroll Properties' license to collect rents. (R. Doc. 1-1 at 176-179).

On December 28, 2018, Fannie Mae initiated foreclosure proceedings by filing a Verified Petition for Executory Process in the 19th Judicial District for the Parish of East Baton Rouge, State of Louisiana (the "Executory Proceeding").[2] (R. Doc. 1-1 at 180-191; Ex. 9 to Complaint). The state court judge then signed an Order of Seizure and Sale in the Executory Proceeding, ordering the issuance of Writ of Seizure and Sale, with appraisal, of the Property. (R. Doc. 1-1 at 192-194). The Order of Seizure and Sale appointed Latter & Blum as the keeper of the mortgaged property with full power of administration of the seized property. (R. Doc 1-1 at 194). Fannie Mae purchased the Property at the judicial sale. (R. Doc. 1-1 at 195-202; Ex. 11 to Complaint).

---

[2] *See Federal National Mortgage Association (FNMA) d/b/a Fannie Mae v. Carroll Properties One LLC*, No. 677793, Div. "D".

Fannie Mae is now seeking recovery from the Carrolls on the basis that they are guarantors who are personally liable for breach of the obligations to repair and maintain the Property, as well as for "Transfers" not permitted under the Loan Agreement. (R. Doc. 1). These purportedly disallowed "Transfers" constitute three separate liens that were placed on the Property prior to the September 23, 2020 judicial sale: (1) $7,477.54 lien by Cornerstone Commercial Flooring, L.L.C recorded on November 19, 2018 (the "Cornerstone Lien"); (2) $17,009.68 lien by Noland Company recorded on February 1, 2019 (the "Noland Lien"); and (3) a $12,382.50 lien by Baton Rouge Sewer & Drain Service, Inc. d/b/a Roto Rooter Plumbing recorded on February 6, 2019 (the "Roto Rooter Lien") (collectively, the "Liens"). (R. Doc. 1-1 at 199-200).

The Carrolls sought dismissal of the action, claiming that they are not subject to personal liability because the Executory Proceeding was based on a non-recourse ground under the Loan Agreement. (R. Doc. 12). The Court denied the motion. (R. Doc. 18).

On October 25, 2022, the Carrolls' Third-Party Complaint against Latter & Blum was entered into the record. (R. Doc. 28). In this pleading, the Carrolls sought recovery against Latter & Blum based on theories of breach of contract, breach of fiduciary duties, and third-party beneficiary status. Among other things, the Carrolls alleged that Latter & Blum ordered and refused to pay for materials and labor from Cornerstone, Noland, and Roto Rooter, resulting in the Liens. (R. Doc. 28 at 5-7). The Carrolls alleged that Latter & Blum "chose to pay itself and reimburse itself out of operating revenues in preference to paying amounts due Cornerstone, Noland and Roto Rooter (and perhaps other accounts payable) and to keep the Property in proper repair." (R. Doc. 28 at 8). As a result, the Carrolls alleged that Latter & Blum should be held

3

liable to the extent that the Liens and the waste "result in personal liability of [the Carrolls] to Fannie Mae." (R. Doc. 28 at 8-9).

On January 11, 2023, Latter & Blum filed its first Motion to Dismiss, which sought an order dismissing the Third-Party Complaint. (R. Doc. 38). Latter & Blum argued that the Carrolls failed to state claims for breach of contract, breach of fiduciary duty, or third-party beneficiary status because they are not parties to the Property Management Agreement and are not otherwise designated as third-party beneficiaries in that contract. In opposition, the Carrolls argued that they had stated a plausible claim for legal indemnity, which would not require privity of contract. (R. Doc. 44 at 6-12). In the alternative, the Carrolls sought the opportunity to amend the Third-Party Complaint to raise a claim for legal indemnity. (R. Doc. 44 at 12).

On May 23, 2023, the Court granted Latter & Blum's first Motion to Dismiss (R. Doc. 38), dismissed the Third-Party Complaint (R. Doc. 28) with prejudice, and provided the Carrolls the opportunity to file a revised Third-Party Complaint raising any claim for legal indemnity against Latter & Blum. (R. Doc. 48). The Court also vacated the Scheduling Order (R. Doc. 23) and set a scheduling conference, which was subsequently cancelled. (*See* R. Docs. 53, 59).[3]

On June 5, 2023, the Carrolls filed a revised Third-Party Complaint, which solely seeks recovery based on a claim of legal indemnity. (*See* R. Doc. 49, "Amended Third-Party Complaint"). This Amended Third-Party Complaint raises many of the same factual allegations in the original Third-Party Complaint. In seeking to recovery for alleged legal indemnity, however, the Carrolls now allege that "[a]ny fault of Defendants, which is expressly denied, is solely constructive or derivative of Latter & Blum's negligence, tortious acts, and/or contractual

---

[3] The Court will separately issue an amended Scheduling Order considering the deadlines proposed by the parties and the need to move this action forward without further delays.

breaches, namely, is failure to pay certain contractors, its allowing the Liens to be placed on the Property, and its failure to keep the Property in proper repair." (R. Doc. 49 at 11).

On August 4, 2023, Latter & Blum filed the instant second Motion to Dismiss, which seeks an order dismissing the Amended Third-Party Complaint. (R. Doc. 54). Latter & Blum argues that the Amended Third-Party Complaint fails to state a claim for legal indemnity because, under Louisiana Supreme Court precedent, "the party seeking indemnification **must be without fault** and that a weighing of relative fault of tortfeasors has no place in the concept of indemnity." (R. Doc. 54-1 at 6) (emphasis in the original). In light of the foregoing, Latter & Blum argues that the Carrolls cannot succeed on their claim for legal indemnity because there is no foreseeable basis for concluding that the Carrolls do not share any liability given that, based on the allegations in the Complaint and attached exhibits, the Carrolls "were made aware that [Carroll Properties] was in breach of the Loan Agreement and what [was] needed to be done in order to become in compliance" with the Loan Agreement. (R. Doc. 54-1 at 7-8). Latter & Blum further asserts that the Carrolls cannot seek legal indemnification because the Liens at issue were placed on the Property only after Carroll Properties was already in default on the Loan Agreement. (R. Doc. 54-1 at 9).

In opposing the motion, the Carrolls first note that they specifically alleged that any potential finding of fault on their part would be "constructive or derivative" of Latter & Blum's fault based upon its breach of the Property Management Agreement, resulting in the Liens. (R. Doc 56 at 8-11). The Carrolls further argue that whether they are directly at fault turns on factual findings that cannot be made in the context of ruling upon a Rule 12(b)(6) motion to dismiss. (R. Doc. 56 at 11-13). In addition, the Carrolls assert that they cannot ultimately be held directly at fault because (1) they were not parties to the Loan Agreement and (2) the default alleged by

Fannie Mae was precipitated by Latter & Blum's failure to maintain the Property. (R. Doc. 56 at 12-13).

In reply, Latter & Blum largely repeats its original arguments. (R. Doc. 58). Latter & Blum argues its acts or omissions would not be the cause in fact of any personal liability on behalf of the Carrolls, who independently executed personal guarantees without any involvement by Latter & Blum. (R. Doc. 58 at 2, 4). Latter & Blum again argues that the Carrolls cannot succeed on a claim for legal indemnity because they "are not and cannot be free from fault" given that they received notice of the opportunity to cure the defects because Carroll Properties was placed into default, and did not take any action. (R. Doc. 58 at 3).

## II.    Law and Analysis

### A.    Legal Standards

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

### B.    Analysis

Having considered the record and the arguments of the parties, the Court concludes that the Carrolls, through the Amended Third-Party Complaint, have stated a plausible claim for legal indemnity against Latter & Blum. Accordingly, the Court will deny the instant Motion to Dismiss.

Louisiana law recognizes a claim for legal indemnity. "It has long been held in Louisiana that a party not actually at fault, whose liability results from the faults of others, may recover by way of indemnity from such others." *Nassif v. Sunrise Homes, Inc.*, 739 So. 2d 183, 185 (La. 1999) (quoting *Bewley Furniture Co. v. Maryland Cas. Co.*, 285 So. 2d 216, 219 (La. 1973)). "The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement." *Nassif*, 739 So. 2d at 185 (citations omitted). "The cases have referred to this imposed liability variously as technical, constructive, vicarious and derivative." *Bewley*, 285 So. 2d at 219.

A claim for legal indemnity "arises only where the liability of the person seeking indemnification is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed." *Nassif*, 739 So. 2d at 185. "[B]ecuse the party seeking indemnification must be without fault, a weighing of the relative fault of tortfeasors has no place in the concept of indemnity." *Id*. Stated differently, "the right to indemnity from the person primarily negligent exists only in favor of one who is vicariously liable for the damages caused because of merely technical or constructive fault." *Hebert v. Blankenship*, 187 So. 2d 798, 803 (La. App. 3d Cir. 1966). A party "who is actually negligent or actually at fault cannot recover [legal] indemnity." *Hamway v. Braud*, 838 So. 2d 803, 806 (La. App. 1st Cir. 2002). Accordingly, "a third-party claim for indemnity should be dismissed if

'[t]here is no foreseeable combination of findings, viewing the allegations of the pleadings . . . in the light most favorable to the [party seeking indemnity], that could result in [that party] being cast in judgment for mere technical or passive fault.'" *Martco Ltd. P'ship v. Brucks Inc.*, 430 Fed. App'x 332, 335 (5th Cir. 2011) (quoting *Threlkeld v. Haskins Law Firm*, 922 F.2d 265, 267-68 (5th Cir. 1991)).

Latter & Blum argues that the Carrolls cannot recover from Latter & Blum based on legal indemnity because, even where the pleadings are read in the light most favorable to the Carrolls, there is no possibility that the trier of fact could reach the conclusion that the Carrolls are "free from fault." (R. Doc. 54-1 at 7). Latter & Blum argues that the Carrolls are not free from fault, as a matter of law, because they were put "on notice" that Carroll Properties, "a company they ran, was allegedly in violation of the Loan Agreement, which they had executed as limited guarantors, and offered them an opportunity to cure their defect before being placed into default." (R. Doc. 54-1 at 8). Indeed, the Third-Amended Complaint specifically alleges that a "Notice of Demand for Cure" was sent to Carroll Properties by letter dated September 12, 2018 . (R. Doc. 49 at 4). This letter was sent to the attention of Austin Carroll at an address that Latter & Blum represents is the Carrolls' home. (R. Doc. 54-1 at 7; *see* R. Doc. 1-1 at 172-175, Ex. 7 to Complaint). Latter & Blum further argues that the Carrolls were otherwise notified of the default on October 26, 2018, and did nothing to defend Carroll Properties in the Executory Proceeding. (*See* R. Doc. 54-1 at 8). Latter & Blum has not shown as a matter of law that the failure of the Carrolls (individually) to defend Carroll Properties (the separate entity) in the Executory Proceedings, for Latter & Blum's failure to properly maintain the property, precludes a finding that the Carrolls are both free from fault.

As noted, Fannie Mae is seeking recovery from the Carrolls, not Carroll Properties, in their capacity as signatories to the Guaranty of Non-Recourse Obligations ("Guaranty"). The Guaranty provides that the Carrolls may be held personally liable for "all amounts, obligations and liabilities owed to [Fannie Mae] under Article 3 (Personal Liability) of the Loan Agreement . . . ." (*See* R. Doc. 1-1 at 131-143; Ex. 3 to Complaint). Latter & Blum has not established, as a matter of law, that any finding that Carroll Properties was at fault for the underlying default would preclude the Carrolls (in their capacities as guarantors) from recovering from a third party on the basis of legal indemnity.[4] This depends, in part, on factual issues outside of the pleadings.

Furthermore, Fannie Mae is seeking recovery from the Carrolls on the basis that they are guarantors who are personally liable for breach of the obligations to repair and maintain the Property, as well as on the theory that the Liens constituted disallowed "Transfers" under the Loan Agreement. The Carrolls are specifically seeking legal indemnity from Latter & Blum with respect to these two claims. With respect to the first potential basis for liability, the Carrolls have alleged that "Latter & Blum was, among other things, responsible for maintenance and repairs through contractors, if necessary, and purchasing supplies and paying all maintenance expenses out of the operating account" of the Property Management Agreement. (R. Doc. 49 at 3). With respect to the second potential basis for liability, the Carrolls have alleged that the existence of the Liens was a result of Latter & Blum's failure and refusal to pay the underlying contractors, despite having "exclusive control over the operating account." (R. Doc. 49 at 3, 5-7). The Court has already concluded that the Carrolls cannot recover for breach of the Property Management Agreement, breach of fiduciary duty under the Property Management Agreement, or as third-

---

[4] The Court is not reaching any conclusion regarding whether the Carrolls, in either their capacity as guarantors or as members of Carroll Properties, are potentially at fault. As explained below, the Court is merely reaching the conclusion that the issue of fault has not been established by the pleadings, and, accordingly, the Carrolls may proceed with a legal indemnity claim against Latter & Blum at this time.

party beneficiaries of the Property Management Agreement. (*See* R. Doc. 48). Nevertheless, the Court concludes that the Carrolls have stated a non-contractual claim for legal indemnity if they can prove that their fault (if any) was solely constructive or derivative of Latter & Blum's own fault.

In sum, the Court concludes that the Carrolls have alleged a plausible claim of legal indemnity against Latter & Blum. The Carrolls have specifically alleged that any potential finding of liability on their part would be "constructive or derivative" of Latter & Blum's own fault. The factual allegations in the pleadings, as well as the required elements for legal indemnity under Louisiana law, support a finding that this claim is plausible. Any potential finding of direct fault, either partially or in whole, of the Carrolls is an issue outside of the pleadings. At this time, the Court will not make a finding, based solely on the allegations, that the Carrolls are at fault for the purposes of precluding a claim for legal indemnity. Latter & Blum has presented the Court with no legal decisions holding that guarantors such as the Carrolls cannot seek legal indemnity from a third party.

## III.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that Latter & Blum's Motion to Dismiss for Failure to State a Claim (R. Doc. 54) is **DENIED**.

Signed in Baton Rouge, Louisiana, on October 17, 2023.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE